UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-mj-02257-Torres

UNITED STATES OF AMERICA

v.

JAMES ROBERT MILLS, JR.

**Defendant**
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___ Yes  X  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes  X  No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___ Yes  X  No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   *Dwayne E. Williams*
DWAYNE E. WILLIAMS
Assistant United States Attorney
Special Prosecutions
Florida Bar No. 0125199
99 Northeast 4th Street, 5th Floor
Miami, Florida 33132
Tel.: (305) 961-9163
Email: Dwayne.Williams@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| James Robert Mills, Jr. | ) Case No. 22-mj-02257-Torres |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of January 31, 2022 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) and (2) | Forcible Assault on a Federal Officer with a Deadly Weapon |
| 18 U.S.C. § 1114(3) | Attempted Murder of a Federal Officer and a Person Assisting a Federal Officer |
| 18 U.S.C. § 924(c)(1)(A)(iii) | Use of a Firearm During and In Relation to a Crime of Violence, and Discharge of the Firearm |

This criminal complaint is based on these facts:
See Affidavit attached.

☑ Continued on the attached sheet.

ID #4994

*Complainant's signature*

Thomas L. Wever, FBI Task Force Officer
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone.

Date: Feb. 17, 2022

*Judge's signature*

City and state: Miami, Florida    Hon. Edwin G. Torres, Chief U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

Your affiant, Thomas L. Wever, being duly sworn under oath, hereby deposes and states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Police Detective with the Miami-Dade Police Department (MDPD) and a Task Force Officer with the Federal Bureau of Investigation (FBI). I have been a Police Officer for twenty-four (24) years, and I am currently assigned to the MDPD Homicide Bureau Cold Case Squad and detached to the FBI Violent Crimes and Fugitive Task Force (VCFTF). I was an MDPD Robbery Bureau Detective for thirteen (13) years, where I held assignments in the Robbery Investigations Section, Bureau of Alcohol, Tobacco, and Firearms (ATF) Gun Task Force, and the FBI-VCFTF. In 2021, I was assigned to the MDPD Homicide Bureau Cold Case Squad, while remaining detached to the FBI. I have received general and specialized training in different types of investigations and have been involved in hundreds of investigations, having been the lead investigator in murder, robberies, home invasion robberies, murder for hire, shootings, carjackings, commercial robberies, and violent fugitives.

2. The statements contained in this Affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials involved in this investigation. I have not included in this Affidavit each and every fact known to me. Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against James Robert Mills, Jr., also known as "B" ("MILLS"), for the following criminal violations: Forcible Assault on a Federal Officer with a Deadly Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Attempted Murder of a Federal Officer and a Person Assisting a Federal Officer, in violation of 18 U.S.C. § 1114(3); and Use of a Firearm During and In Relation to a

Crime of Violence, and Discharge of the Firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Specifically, on January 31, 2022, in Miami-Dade County, in the Southern District of Florida, MILLS shot a firearm at federal officers.

## PROBABLE CAUSE

### Shooting – January 31, 2022

3. On January 31, 2022, at approximately 8:28 PM, two FBI Task Force Officers (TFO) assigned to FBI Miami's Homestead Resident Agency and one City of Homestead Police Department (HPD) Detective were traveling together in an unmarked FBI rented vehicle (herein referred to as the "TFO Vehicle") while conducting an investigation in the area of 22120 SW 116th Avenue, Miami, Florida 33032. The TFO Vehicle was a white 2022 Jaguar F-Pace, with Florida license plate ending in I57. FBI TFO D.I. (herein referred to as "Victim 1") was driving the vehicle, FBI TFO C.W. (herein referred to as "Victim 2") was in the front passenger seat, and the HPD Detective R.M. (herein referred to as "Victim 3") was seated in the rear passenger seat.

4. The TFO Vehicle was driving north along SW 116th Avenue approaching the 22200 block and drove past a parked dark colored Nissan SUV (herein referred to as the "Subject Vehicle"). As the TFO vehicle passed the Subject Vehicle, Victim 1 observed the rear driver side window down on the Subject Vehicle and Victim 3 observed a firearm protrude from the window of the Subject Vehicle. Victim 3 yelled, "gun, gun," and immediately after gunshots were fired at the TFO Vehicle from the Subject Vehicle. Victim 1 accelerated, and another round of gunshots were fired from the Subject Vehicle. Victim 1 turned on multiple streets to escape the gunfire and requested emergency backup via the police radio.

5. When additional law enforcement officers arrived in the area, the Subject Vehicle was no longer at the scene.

6. The neighborhood where the shooting took place is equipped with Shot Spotter technology, which documents the presence of gunshots. At approximately 8:28 PM a burst of ten (10) shots was detected, followed five seconds later by a burst of twelve (12) shots. The second burst of twelve (12) shots was also identified as being on the move southbound at twenty-seven miles per hour along with the possible presence of multiple shooters.

7. A visual inspection of the TFO Vehicle revealed a minimum of two holes in the vehicle which appeared to be bullet projectile strikes. The TFO Vehicle was secured and towed for processing.

8. The scene was processed by the Miami-Dade Police Department Crime Scene Investigations Section (CCIS). Preliminary findings from scene processing revealed approximately twenty-four (24) 9-mm casings and one (1) projectile recovered. None of the victims discharged their firearms.

9. After the incident, Victim 1 contacted a Confidential Human Source (CHS) to query the CHS about the shooting. The CHS told Victim 1 that an individual who goes by the street name of "B" was the shooter. Victim 1 is familiar with "B" and after being provided the street name "B" from the CHS, Victim 1 realized "B" is who he saw in the rear seat of the Subject Vehicle. The CHS provided information that "B" was the shooter and was believed to be with a close associate known by the street name of "S" (abbreviation of nickname).

10. Law enforcement was aware of both "B" and "S" and provided the true name of "B" as James Robert Mills, Jr. ("MILLS") and the true name of "S" as "John Doe" ("DOE"). Victim 1 was shown a photograph of MILLS and identified him as the person be observed in the backseat of the Subject Vehicle just before the shots were fired.

11. On February 1, 2022, the CHS was interviewed and identified a photo of MILLS to be the person he knows as "B" and identified a photograph of DOE to be the person he knows as "S." The CHS also disclosed (786) 366-6670 as the number for the cellular telephone used by MILLS (hereinafter referred to as "MILLS' cell phone").

12. In the interview, the CHS stated that on January 31, 2022, he ran into MILLS and DOE at a neighborhood gathering regarding a resident motorcyclist who had been killed in an accident earlier that day. They gathered in and around the Subject Vehicle, which the CHS described as a dark blue or black Nissan Rogue or Nissan Murano. The CHS advised that DOE sat in the driver seat of the Subject Vehicle, MILLS sat in the rear driver side seat of the Subject Vehicle, and the CHS was standing just outside the car with the front passenger side door open. The CHS reported that both MILLS and DOE had firearms, concealed in the waistbands of their pants.

13. The CHS reported that when MILLS and DOE saw the TFO Vehicle, they stated that "O.D.," a member of an opposing gang who was known to be driving a white Range Rover SUV, was coming down the street. As the TFO Vehicle, also a white SUV, drove down the street, the CHS stated that MILLS and DOE believed this to be "O.D." The CHS knew what MILLS and DOE were going to do when they stated they saw "O.D.," so the CHS ducked into the front passenger seat of the Subject Vehicle to get cover from any gunfire.

14. The CHS stated that as the TFO Vehicle approached, the CHS saw that MILLS began shooting out of the rear window at the TFO Vehicle. As MILLS was shooting, DOE began driving away. The CHS believed MILLS shot 18-20 times. The Subject Vehicle sped away as MILLS finished shooting. After about 100 yards, the CHS instructed DOE to stop and let him out of the Subject Vehicle.

4

15. On February 4, 2022, law enforcement interviewed the CHS again. For the most part, the CHS provided the same account of the January 31, 2022-shooting that he provided on February 1, 2022; however, the CHS also disclosed additional information. Among other things, the CHS stated:

- The CHS spent the night of January 30, 2022, at his girlfriend's house, and she dropped him off on SW 116 Avenue.

- When the CHS arrived at SW 116 Avenue, he ran up the street, to the scene of the traffic accident. The deceased motorcyclist was his friend.

- After the shooting, when the CHS got out of the Subject Vehicle, he sat on the front yard of a nearby house for ten to fifteen minutes. About two minutes after the shooting, after he had exited the Subject Vehicle, Victim 1 called the CHS and reported that somebody had just shot at him, "in the village." The CHS spoke to Victim 1 again, later that night.

- Victim 1 is a friend of the CHS's family. Indeed, Victim 1 is basically an in-law, because he is married to the CHS's cousin. In particular, Victim 1's wife is his aunt's daughter, on his father's side. Victim 1 is also the CHS's "handler."

- After spending ten to fifteen minutes on the front yard, the CHS returned to his girlfriend's house. A woman he calls "Auntie" drove him there. He doesn't know Auntie's real name.

- The CHS had not had any communications with B (MILLS) or S (DOE) since the shooting.

- The word on the street is that police were riding in the white SUV (the TFO Vehicle).

16. On February 9, 2022, the CHS delivered his cell phone to the FBI, and granted the FBI permission to copy and search the phone's contents. The FBI Computer Analysis Response Team ("CART") made a digital copy of the CHS's phone. A review of that copy revealed that the CHS's phone was at the scene of the shooting from approximately 7:24 PM to 8:28 PM on January 31, 2022. The CHS's phone was then located in the immediate vicinity of DOE's residence in Miami, Florida, from approximately 8:34 PM to 8:48 PM, on January 31, 2022. During that time, at approximately 8:46 PM, the CHS's phone placed a call to DOE's phone number, which lasted for approximately two minutes and 49 seconds. Thereafter, on January 31, 2022, the CHS's phone was at the following locations: at 9:06 PM, the phone was around the intersection of SW 113 Avenue, and SW 222 Street; at 9:40 PM, the phone was around the intersection of SW 113 Court, and SW 225 Street. Later, at 12:05 AM on February 1, 2022, the phone was located in the vicinity of his girlfriend's house. On February 5, 2022, at approximately 2:05 PM, the CHS's phone made an internet search for "accessory to a crime."

17. On or about February 13, 2022, the CHS was contacted by law enforcement and requested to be interviewed again. During a subsequent interview, the CHS told law enforcement that the CHS drove alone in the Subject Vehicle to the area of SW 222 Street & 116 Avenue, in Miami, parking the vehicle on the side of the road. He stated that after a period of time, MILLS and DOE approached the Subject Vehicle on foot and entered the vehicle, which remained parked on the side of the road. The CHS stated MILLS was sitting in the back seat behind the driver, DOE was sitting in the back seat behind the front passenger seat, and the CHS was in the driver seat of the vehicle. The CHS again stated that the only persons inside the vehicle were MILLS, DOE, and the CHS. The CHS further informed law enforcement that after the shooting, the CHS drove both DOE and MILLS to DOE's residence in Miami, Florida. Upon arrival at DOE's

residence, the CHS gave DOE the keys to the Subject Vehicle and requested that they (DOE and MILLS) return the vehicle to an associate named "JOHN DOE 2," also known as "J" (abbreviated nickname). The CHS stated that other than these changes, the details previously documented, including only witnessing MILLS shooting, remained the same. The CHS denied being armed with a firearm.

### Historical Cell Site Information for MILLS' Cell Phone

18. On February 3, 2022, the Honorable United States Magistrate Judge Jacqueline Becerra issued a search warrant in Case No. 22-mj-02175-Becerra, which required T-Mobile to provide the FBI with historical cellular tower data in relation to MILLS' cell phone, for the period from September 1, 2021, through February 3, 2022. The historical cell site information disclosed by T-Mobile shows that on January 31, 2022, MILLS' cell phone was utilizing a cellular tower in the vicinity of the shooting, when it took place. Further, immediately following the shooting, MILLS' cell phone was no longer utilizing the same tower and had fled the area.

### NIBIN Analysis of Shell Casings

19. The National Integrated Ballistic Information Network ("NIBIN") advised law enforcement that toolmark analysis of shell casings reveals that two different firearms were fired at the scene of the January 31, 2022-shooting. Thus, notwithstanding that the victim(s) reported seeing one firearm protrude from the rear driver side window, the NIBIN analysis is indicative of two shooters at the scene. Furthermore, the shell casings recovered from one of the firearms fired at the scene link that firearm to previous shootings in Miami-Dade County. Although the NIBIN results are pending microscopic confirmation, the NIBIN analysis matched the strike patterns and indentations on shell casings from January 31, 2022, to shell casings that were recovered at three previous shootings: (1) on June 20, 2021, at the Southland Mall at 20505 S. Dixie Highway in

Miami; (2) on September 15, 2021, at 12437 SW 220th Street in Miami; and (3) on October 8, 2021, at 22515 SW 113th Court in Miami. Based upon the preliminary NIBIN analysis, these matching strike patterns and indentations indicate that shell casings at all four shooting were from the same firearm.

### MILLS was Present at the October 8, 2021-Shooting

20. The October 8, 2021-shooting is significant, because MILLS was present in the vicinity of the shooting. A review of the Miami-Dade Police reports regarding that incident show that at approximately 11:01 PM, Shot Spotter technology detected approximately fifty-six (56) shots fired in the vicinity of 22515 SW 113th Street in Miami. At least one individual had been hit by a bullet, and there were vehicles in the area that had sustained damage. Shell casings were recovered from the scene and entered into NIBIN.

21. On October 9, 2021, at approximately 3:48 AM, Miami-Dade Police Department went to the Jackson South Medical Center where MILLS was seeking treatment after being grazed by a bullet in his buttocks. MILLS provided the phone number, (786) 366-6670, as his contact phone number, which is the same number the CHS gave law enforcement as MILLS' phone number. At approximately 4:47 AM, MILLS provided a sworn audio-recorded statement to Miami-Dade Police Department Detectives that he (MILLS) was at a fish-fry gathering located on SW 224th Street near the "Purple Store." MILLS stated that he heard numerous shots fired and attempted to gain cover behind a tree. After feeling burning pain, MILLS left the scene in a black Honda Accord and went to a friend's residence, where his wound was treated. MILLS then went to the hospital because the wound would not stop bleeding. MILLS claimed to not have seen the shooters and could not provide a description. MILLS later changed the location of the gathering to 22320 SW 112th Place, and stated that when the gunfire erupted, he was at a stop sign at 224th

Street and 112th Place. MILLS then stated that he did not take cover and instead ran home. It should be noted that MILLS changed the location of the incident when interviewed by law enforcement. The final location he provided is approximately four to five houses away from where the shooting took place and Shot Spotter technology only detected gunfire at the shooting location, not where MILLS claims he was located.

### MILLS' Post-Miranda Statements

22. On February 13, 2022, the Honorable United States Magistrate Judge Chris M. McAliley granted a search warrant in Case No. 22-mj-02227-McAliley, for DOE's address in Miami, Florida (the "residence"). On February 16, 2022, law enforcement executed the warrant at the residence, where they encountered four persons inside: MILLS; DOE; DOE's mother; and an adult male whom law enforcement believes to be DOE's mother's boyfriend. During the search, law enforcement discovered and seized two firearms: a Taurus .45 caliber pistol; and a loaded Glock 17, 9 mm pistol, with an extended magazine. Law enforcement discovered the Glock in the attic of the residence. Law enforcement also seized two cellular phones. One cellular phone was on the person of MILLS to which he admitted ownership. The second cellular phone was in the possession of DOE's mother. She told law enforcement the phone belonged to DOE, and when law enforcement presented the phone to him, DOE admitted ownership

23. On February 16, 2022, following the search of the residence, MILLS consented to be interviewed by law enforcement. MILLS was subsequently transported to the FBI Homestead Resident Agency where he waived his Miranda Rights and agreed to speak to law enforcement. The interview was audio and video recorded. MILLS confessed to being inside of the Subject Vehicle along with DOE and two other individuals (UnSub-1 & UnSub-2), with whom he associates, but does not know their legal names. MILLS stated that he was armed with a pistol

which contained a 30-round extended magazine that was not fully loaded. MILLS was sitting in the back seat behind the driver, while DOE sat next to him in the back seat. UnSub-1 was seated in the driver's seat, and UnSub-2 was seated in the front seat passenger seat. MILLS said that all individuals in the vehicle observed the TFO Vehicle near a McDonald's restaurant earlier in the night, then again observed the same vehicle near the shooting scene, just prior to the shooting. MILLS stated that as the TFO Vehicle passed by, the TFO Vehicle's windows were down, and MILLS observed three individuals inside the vehicle that he did not recognize. MILLS stated that he believed the individuals inside the vehicle were rival gang members, including a rival gang member known by the street name "O.D.," and he believed that he was going to be shot at, so MILLS fired approximately twelve to thirteen times at the TFO Vehicle. MILLS stated that the driver (UnSub-1) drove away southbound on SW 116 Avenue. MILLS continued to shoot and heard another gun being fired from inside of the Subject Vehicle, but he would not say who else was shooting. MILLS stated that sometime after the shooting, he placed the firearm that he fired inside the attic at DOE's residence in Miami, Florida. As referenced in paragraph 22, above, law enforcement recovered a loaded Glock 17, 9 mm pistol with an extended magazine from the attic of DOE's residence in Miami.

**DOE's Post-Miranda Statements**

24.     On February 16, 2022, DOE consented to be interviewed by law enforcement. DOE was subsequently transported to the FBI Homestead Resident Agency where he waived his Miranda Rights and agreed to speak to law enforcement. The interview was audio and video recorded. DOE stated that he and MILLS were present during the time of the shooting. DOE stated that MILLS was armed with a firearm, and that MILLS fired his weapon. DOE admitted that he too was armed with a firearm, but he denied firing the weapon. DOE further stated that the

Subject Vehicle was occupied by a total of four males, but DOE would only definitively say that MILLS was shooting at the TFO Vehicle.

## CONCLUSION

25. Based on the facts set forth above, I respectfully submit that probable cause exists to charge James Robert MILLS, Jr. with: Forcible Assault on a Federal Officer with a Deadly Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Attempted Murder of a Federal Officer and a Person Assisting a Federal Officer, in violation of 18 U.S.C. § 1114(3); and Use of a Firearm During and In Relation to a Crime of Violence, and Discharge of the Firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

THOMAS L. WEVER, TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone this ___ day of February 2022.

HONORABLE EDWIN G. TORRES
CHIEF U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

11